READCO, INC., R.D.P. Associates, Lan Associates XII and Antonio Reale, Plaintiffs–Appellants,

. v.

MARINE MIDLAND BANK; Eagle Rock Holding, Inc., a New York Corp., Defendants–Appellees.

No. 369, Docket 95–7317.

United States Court of Appeals, Second Circuit.

Argued Nov. 20, 1995.

Decided April 10, 1996.

Joseph M. Cerra, New York City (A. Dennis Terrell, Shanley & Fisher, P.C., New York City), for Plaintiffs–Appellants.

Aaron Rubinstein, New York City (Jeffrey A. Fuisz, Kaye, Scholer, Fierman, Hays & Handler, New York City), for Defendants–Appellees.

Before: CARDAMONE, WALKER, and PARKER, Circuit Judges.

WALKER, Circuit Judge:

Plaintiffs Readco, Inc., R.D.P. Associates, Lan Associates XII, and Antonio Reale appeal from a memorandum and order of the United States District Court for the Southern District of New York (Kevin T. Duffy, *District Judge* ) that granted summary judgment on all causes of action in favor of defendants Marine Midland Bank ("Marine") and Eagle Rock Holding, Inc. ("Eagle Rock") and dismissed the amended complaint. *See Readco, Inc. v. Marine Midland Bank, N.A.,* 879 F.Supp. 355 (S.D.N.Y.1995). Plaintiffs alleged in their amended complaint seven causes of action, which can be grouped into four categories: breach of contract, common law fraud, waiver, and estoppel (both promissory and equitable). The district court granted summary judgment in favor of defendants on the breach of contract claims on the ground that, even interpreting the contract in the light most favorable to plaintiffs, there was "no rational legal basis on which to base a finding for Plaintiffs." *Id.* at 360. The district court entered summary judgment against plaintiffs on the common law fraud and estoppel causes of action, because, in its view, plaintiffs had failed to offer any evidence that defendants had made a material omission. *Id.* at 361–62, 363. Finally, the court dismissed the waiver claim on the ground that the complaint failed to allege a voluntary and intentional abandonment of a known right. *Id.* at 362. Plaintiffs now appeal the dismissal of the breach of contract, estoppel, and waiver claims.

## BACKGROUND

This litigation arises out of the construction of a residential condominium building, known as Crown View Manor, in West Orange, New Jersey. Marine made loans to Readco for the purpose of purchasing land and constructing the condominium units. As

part of its consideration for the loans, Marine received various guaranties from Readco, R.D.P., and Reale, among others. In 1989, Readco defaulted on the loan agreements and in June 1991, Marine, Readco, and the guarantors entered into a forbearance agreement, in which Marine agreed not to exercise certain of its contractual rights until January 1992.

In June 1992, after the forbearance agreement expired, Marine and Eagle Rock, an affiliate of Marine, entered into a settlement agreement (the "Settlement Agreement") with Readco and the guarantors, in which Readco conveyed the land and buildings at Crown View Manor to Eagle Rock, and Marine agreed not to sue Readco for the debt, released the guaranties, and assumed certain liabilities.

As part of the earlier financing of Crown View Manor, Chase Manhattan Bank ("Chase") had issued a $3,000,000 letter of credit in favor of Marine, which Reale had personally guaranteed up to the amount of $1,250,000. After Readco defaulted under the loan agreements, Marine called the letter of credit and Chase paid the full $3,000,000. As part of § 17A of the Settlement Agreement, the parties agreed that

> Upon the joint written request of Chase and Antonio Reale, made within six (6) months of the Closing Date and accompanied by the duly executed agreement of Chase ... that, subject to the payment of $1,250,000 in immediately available funds to Chase, all obligations of Antonio Reale ... are paid and discharged in full, Lender agrees to promptly make such payment of $1,250,000 to Chase, ... *provided, further,* that in the event that the Audit referred to in Section 6(r) of this Agreement indicates that greater than $1,980,000 in aggregate Loans by the Lender to the Borrower have been used for purposes other than as expressly permitted under the Loan Agreement or as elsewhere consented to in writing by the Lender, then, and in any such event, the maximum amount of the payment to Chase available under this Section 17A shall be reduced by the amount of such excess over $1,980,000.

The closing of the Settlement Agreement occurred on October 15, 1992. Reale and Chase subsequently negotiated a settlement agreement (the "Chase Settlement") between them and, on March 15, 1993, made a written request to Marine for the $1,250,000, pursuant to § 17A. On April 30, 1993, Marine informed Reale that it would not pay the $1,250,000 to Chase because its "KPMG audit report" revealed that Readco had improperly diverted more than $3,300,000.

In July 1993, plaintiffs filed the instant action in New Jersey Superior Court, alleging that defendants were obligated to make the $1,250,000 payment. Defendants timely removed the action to federal court in New Jersey, pursuant to 28 U.S.C. §§ 1441 and 1446. In December 1993, the parties consented to transfer the case to the Southern District of New York and in February 1994, defendants moved to dismiss the amended complaint under Fed.R.Civ.P. 9(b) and 12(b)(6). On January 31, 1995, the district court entered an order sua sponte, which transformed the motion into one for summary judgment pursuant to Fed.R.Civ.P. 56 and granted the parties twenty days to file any additional affidavits or other supporting documents with the court. On March 15, the district court granted summary judgment to defendants and dismissed the complaint. *Readco,* 879 F.Supp. 355.

## DISCUSSION

▮▮▮ It is well-settled that in ruling on a motion for summary judgment, a

> judge must ask himself not whether he thinks the evidence unmistakably favors one side or the other but whether a fair-minded jury could return a verdict for the [non-movant] on the evidence presented. The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant].

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986). Furthermore, a district judge must view the evidence in the light most favorable to the non-moving party and must draw all inferences in favor of that party. *See Han-*

son v. *McCaw Cellular Communications, Inc.*, 77 F.3d 663, 667 (2d Cir. 1996). When reviewing the grant of a summary judgment motion, we must determine whether "there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party." *Anderson*, 477 U.S. at 250, 106 S.Ct. at 2511.

## A. *The Breach of Contract Claims.*

On appeal, plaintiffs pursue three breach of contract theories. First, they claim that defendants' failure to complete an audit by the time of the closing was a breach of the Settlement Agreement. Second, they argue that § 17A of the Settlement Agreement allows defendants to use only a pre-closing audit to reduce the obligation to pay the $1,250,000 to Chase, and that the use of a post-closing audit is a breach. Finally, plaintiffs contend that defendants have breached an alleged obligation to conduct the audit in good faith. We address each argument in turn.

The first theory rests upon § 6 of the Settlement Agreement, which states in pertinent part:

Neither [Marine Midland] nor [Eagle Rock] shall have any obligation to execute or deliver any Document (other than this Agreement) or any other document or make any payment or take any other action under *Section 2* of this Agreement unless on or prior to the Closing Date the following conditions shall have been satisfied in full or waived in writing by the party or parties for whose benefit the condition exists:

. . . .

(r) [Marine Midland] and [Eagle Rock] shall have received an audit (the "Audit") of the books and records of the Borrower in form and scope satisfactory to [Marine Midland] and [Eagle Rock], and such audit shall find no more than $1,980,000 in aggregate of the Loans provided by the [Marine Midland] to the Borrower have been used for purposes other than as expressly permitted under the Loan Agreement or as otherwise expressly approved by [Marine Midland] in writing.

Plaintiffs contend that, under § 6(r), if defendants failed to conduct a pre-closing audit, defendants breached the Settlement Agreement. This argument has no merit.

■ Under New York law, which governs here pursuant to § 21(c) of the Settlement Agreement, whether a contract is ambiguous is a matter of law for the court to decide, and parol evidence is not admissible to create an ambiguity. *W.W.W. Assocs., Inc. v. Giancontieri*, 77 N.Y.2d 157, 162–63, 565 N.Y.S.2d 440, 566 N.E.2d 639 (1990). A contract is ambiguous where reasonable minds could differ on what a term means, *see Van Wagner Advertising Corp. v. S & M Enters.*, 67 N.Y.2d 186, 191, 501 N.Y.S.2d 628, 492 N.E.2d 756 (1986), but no ambiguity exists where the alternative construction would be unreasonable, *see, e.g., Mandelblatt v. Devon Stores, Inc.*, 132 A.D.2d 162, 167, 521 N.Y.S.2d 672 (1st Dep't 1987) (construction which produces unreasonable result is against general policy of law).

■ Section 6(r) states that Marine and Eagle Rock shall not be required to take any action under § 2 of the Settlement Agreement unless they have received an audit demonstrating that no more than $1,980,000 has been diverted by Readco from the Crown View Manor project. Section 2, in turn, is a standard list of events that were to occur at the closing of the Settlement Agreement, including the execution and delivery of deeds, assignments, and bills of sale. By its own terms, § 6(r) creates no requirement that Marine and Eagle Rock undertake a pre-closing audit nor does it condition the closing upon such an audit; it simply allows Marine and Eagle Rock to refuse to close if a pre-closing audit reveals that more than $1,980,-000 has been diverted.

Plaintiffs' second theory is more plausible. They argue that the audit referred to in § 6(r), the provision on which defendants rely to deny payment, is a pre-closing audit and, because the actual audit followed the closing, it may not be used to nullify the obligation of the defendants to make the $1,250,000 payment under § 17A. Defendants, on the other hand, contend that "the

Audit" referred to in § 17A may occur at any time.

Section 17A of the Settlement Agreement states that if "the Audit referred to in Section 6(r) ... indicates that greater than $1,980,000 in aggregate Loans by [Marine] to the Borrower have been used for purposes other than as expressly permitted," Marine may reduce its payment to Chase "by the amount of such excess over $1,980,000." The terms of § 6(r) by themselves do not place any restriction on when that audit might occur. However, we agree with plaintiffs that the use, in § 17A, of the words "referred to in Section 6(r)" is capable of being interpreted to mean only a pre-closing audit. As we noted above, only an audit that occurred prior to the closing would enable Marine and Eagle Rock to exercise their right not to close, so § 6(r) itself could not contemplate an audit that occurred post-closing: such an audit would be worthless because the time to refuse to close would have already passed. Thus, the reference to § 6(r) can be read as limiting the word "Audit" in § 17A to an audit that would occur pre-closing.

While the reference to § 6(r) in § 17A can be read as limiting the word "Audit" to an audit that would occur pre-closing, this is not the only way to understand what the parties meant by inserting the phrase "the Audit referred to in Section 6(r)." It is also possible that the reference to § 6(r) was meant only to specify the type of audit to be conducted, namely "an audit ... of the books and records of the Borrower in form and scope satisfactory to [Marine Midland] and [Eagle Rock]." Because there are at least two alternative ways to interpret this phrase, the Settlement Agreement is ambiguous.

To create true ambiguity, the interpretation of the Settlement Agreement urged by plaintiffs must still be reasonable. Here, both sets of parties to the Settlement Agreement had a plausible reason to require a pre-closing audit. Defendants were expressly granted by § 6(r) the ability to refuse to

close in the event that Readco had wrongfully diverted more than $1,980,000 of the Crown View Manor loan proceeds.[1] Plaintiffs also had a motive to require that any audit which would affect their rights under § 17A occur pre-closing. Although they (unlike Marine and Eagle Rock) could not refuse to close if the audit did not occur by that time, with an audit in hand at the closing plaintiffs would be able to negotiate with Chase knowing what portion, if any, of the $1,250,000 would be available to fund a settlement. Thus, interpreting § 17A in the manner proposed by plaintiffs is not unreasonable.

■ One final hurdle that plaintiffs must overcome is the rule that where consideration of the contract as a whole will remove the ambiguity created by a particular clause, there is no ambiguity. *Hudson–Port Ewen Assocs., L.P. v. Chien Kuo,* 78 N.Y.2d 944, 945, 573 N.Y.S.2d 637, 578 N.E.2d 435 (1991). The sole other reference in the Settlement Agreement to "Audit" is in § 1, yet the definition provided in § 1 is circular and does not clarify the meaning of § 17A. It states that "'Audit' is defined in *Section 6(r)* of this Agreement," the same reference that creates the ambiguity in the first place. Because there is no other provision in the Settlement Agreement that removes the ambiguity in § 17A, we must vacate the district court's grant of summary judgment on the breach of contract claims and remand this case for trial on these claims.

■ Plaintiffs' final theory rests on Marine's alleged breach of the covenant of good faith and fair dealing, which is implied in every contract under New York law unless there is an inconsistency between the covenant and the other terms of the contractual relationship. *New York Univ. v. Continental Ins. Co.,* 87 N.Y.2d 308, 639 N.Y.S.2d 283, 662 N.E.2d 763 (1995); *Murphy v. American Home Prods. Corp.,* 58 N.Y.2d 293, 304–05, 461 N.Y.S.2d 232, 448 N.E.2d 86 (1983); *Gelder Medical Group v. Webber,* 41 N.Y.2d

---

**1.** We recognize that this benefit may not have been very important to defendants if they intended to and believed that they had bargained for the right in § 17A to set-off any amounts which plaintiffs used for improper purposes against payments to Chase without regard to the timing of the audit. This, however, is a fact question concerning the intent of the parties that is inappropriate for summary judgment resolution.

680, 684, 394 N.Y.S.2d 867, 363 N.E.2d 573 (1977); *Goodstein Constr. Corp. v. City of New York*, 111 A.D.2d 49, 51, 489 N.Y.S.2d 175 (1st Dep't 1985), *aff'd*, 67 N.Y.2d 990, 502 N.Y.S.2d 994, 494 N.E.2d 99 (1986). But plaintiffs have failed to produce any evidence that Marine or Eagle Rock ever violated that covenant. The First Amended Complaint is devoid of any allegation that the audit had not been performed in good faith. Nor have plaintiffs pointed to any evidence to show that Marine or Eagle Rock acted in bad faith. On appeal, plaintiffs cite only to Reale's affidavit, which does not make a single reference to the accuracy of the audit, let alone defendants' good or bad faith in conducting the audit. Accordingly, we believe that there is no disputed issue of material fact that would forestall the grant of summary judgment on this theory.

## B. *Estoppel.*

Plaintiffs argue that the district court also erred in dismissing at the summary judgment stage their claims that defendants are estopped from using the audit results to offset the $1,250,000 obligation under § 17A of the Settlement Agreement on theories of both promissory estoppel and equitable estoppel. We consider each in turn.

### 1. *Promissory Estoppel.*

██ To make out a claim for promissory estoppel, a plaintiff must prove (1) a clear and unambiguous promise, (2) reasonable and foreseeable reliance by the promisee, and (3) unconscionable injury to the relying party as a result of the reliance. *Arcadian Phosphates, Inc. v. Arcadian Corp.*, 884 F.2d 69, 73 (2d Cir.1989); *WE Transport, Inc. v. Suffolk Transp. Serv., Inc.*, 192 A.D.2d 601, 602, 596 N.Y.S.2d 166 (2d Dep't), *appeal denied*, 82 N.Y.2d 656, 602 N.Y.S.2d 805, 622 N.E.2d 306 (1993); *Ripple's of Clearview, Inc. v. Le Havre Assocs.*, 88 A.D.2d 120, 122, 452 N.Y.S.2d 447 (2d Dep't), *appeal denied*, 57 N.Y.2d 609, 456 N.Y.S.2d 1026, 442 N.E.2d 1277 (1982).

██ Plaintiffs cannot satisfy the "clear and unambiguous promise" requirement. In this court, they claim that "Marine made an unambiguous promise in Section 17A to fund Reale's guaranty on the Chase Letter of Credit." Brief of Appellants at 29. The Settlement Agreement, however, states that Marine was required to fund the guaranty only to the extent that the "Audit" did not reveal loan proceed diversions by Readco in excess of $1,980,000. Although plaintiffs contend that the term "Audit" clearly refers to a pre-closing audit, our earlier conclusion that the use of this term is ambiguous forecloses this argument. Because there is no clear and unambiguous promise, the promissory estoppel claim was properly dismissed.

### 2. *Equitable Estoppel.*

██ Equitable estoppel is imposed by law in the interest of fairness to prevent the enforcement of rights which would work fraud or injustice upon the person against whom enforcement is sought and who, in justifiable reliance upon the opposing party's words or conduct, has been misled into acting upon the belief that such enforcement would not be sought.

*Nassau Trust Co. v. Montrose Concrete Prods. Corp.*, 56 N.Y.2d 175, 184, 451 N.Y.S.2d 663, 436 N.E.2d 1265 (1982). Thus, equitable estoppel is a principle or an affirmative defense that serves to stop another party from denying a material fact. *See* 57 N.Y. Jur.2d, *Estoppel* § 13, at 17–18 (1986) (equitable estoppel "is the principle by which a party is absolutely precluded from denying, or asserting the contrary of, any material fact"); 28 Am.Jur.2d, *Estoppel & Waiver* § 27, at 629 (1966) (equitable estoppel is a "rule ... of substantive law, for the reason that it absolutely precludes a person from asserting what would otherwise be his right").

██ Under New York law, the party asserting estoppel must show that the party alleged to be estopped "(1) [engaged in] conduct which amounts to a false representation or concealment of material facts; (2) inten[ded] that such conduct [would] be acted upon by the other party; and (3) [knew] the real facts." *Airco Alloys Div., Airco Inc. v. Niagara Mohawk Power Corp.*, 76 A.D.2d 68, 81, 430 N.Y.S.2d 179 (4th Dep't 1980). In

addition, the party alleging estoppel must also "show with respect to himself: (1) lack of knowledge of the true facts; (2) reliance upon the conduct of the party estopped; and (3) a prejudicial change in his position." *Id.* at 81–82, 430 N.Y.S.2d 179.

Plaintiffs have asserted several different versions of their estoppel claim during the pendency of this litigation. First, in the Seventh Count to the First Amended Complaint, plaintiffs stated that because Marine and Eagle Rock failed "to disclose prior to closing that the audit had not been completed to their satisfaction, and by their failure to waive this condition precedent in writing prior to the closing," they were required to pay the full $1,250,000. In their Brief in Opposition to the Motion to Dismiss, plaintiffs also argued that they had demonstrated a material issue of fact as to equitable estoppel because they were misled by defendants' failure to issue a written waiver of their rights under § 6(r) prior to the closing into believing that the audit had been successfully completed. Plaintiffs further claimed that, based on Marine and Eagle Rock's failure to exercise a written waiver, they entered into the settlement with Chase, reasonably believing that the entire $1,250,000 would be available.

■ These theories falter upon the same shoal that doomed plaintiffs' first breach of contract claim—the erroneous view that Marine and Eagle Rock's failure to conduct an audit prior to the closing was itself a breach. Under any of these theories, plaintiffs cannot make out a claim for equitable estoppel because they cannot satisfy the first element, a false representation or concealment of material facts. As we discussed above, nothing in § 6(r) required that Marine and Eagle Rock complete an audit prior to the closing. Instead, they simply had a right, if the audit was not completed by that time, to refuse to close. By failing to exercise that right, defendants did not, either implicitly or explicitly, represent that an audit had been successfully completed that would not lead to an offset of Marine's obligation.

Of course, as we also note above, § 17A can be reasonably (although not necessarily) construed to create a representation by Marine and Eagle Rock that they will only deduct from the $1,250,000 if they have discovered improper disbursements in a pre-closing audit. Plaintiffs' papers may be read to argue, however obliquely, that such a representation was made and that Marine and Eagle Rock are estopped from using the post-closing audit to reduce the payment due under § 17A. *See, e.g.,* Reply Brief of Appellants at 17.

This argument parallels plaintiffs' second contractual theory that defendants' reliance on a post-closing audit is a breach of § 17A. We find, however, that this is insufficient to create a material issue of fact as to equitable estoppel. At trial, the fact-finder will be entitled to read the Settlement Agreement in either of two ways: (1) the $1,250,000 payment may be reduced only by an audit done prior to the closing, or (2) the payment may be reduced by an audit done at any time before or after the closing. If the jury decides that the first reading is correct, then Marine's alleged "representation" is not false: Marine, as it represented, is required to make payment unless a pre-closing audit has been conducted. On the other hand, if the jury decides that the second reading is correct, there is no "representation" at all; instead the jury will have found that Marine always maintained that it could use either a pre-or post-closing audit. In either event, plaintiffs will have failed to demonstrate the existence of a material misrepresentation.

■ On appeal, plaintiffs assert a new equitable estoppel theory that, if proven, has considerably more force than those previously discussed. They argue that Marine and Eagle Rock were aware of the completion of the KPMG audit prior to the closing, but concealed the results from Readco until after the Chase Settlement was signed. Brief of Appellants at 31–32. Ordinarily, we "will not consider an issue raised for the first time on appeal." *Greene v. United States,* 13 F.3d 577, 586 (2d Cir.1994). This general rule may be disregarded in two circumstances: (1) where consideration of the issue is necessary to avoid manifest injustice or (2) where the issue is purely legal and there is no need for additional fact-finding. *Id.* In the case at bar, plaintiffs were evidently not made aware that the audit might have been completed

prior to the closing until they received a copy of an affidavit from a Marine Vice–President, attaching an audit dated July 31, 1992. This affidavit was received by plaintiffs on or about February 16, 1995, four days prior to the expiration of the time to file any additional evidence with the district court.[2] Because we are remanding this case to district court on the breach of contract theory, we will not consider at this time whether plaintiffs have met the manifest injustice standard. Instead, we direct the district court on remand to consider whether this argument is procedurally barred and, if it is not, to address the claim on the merits.

C. *Waiver*

 Plaintiffs also argue that defendants by their conduct waived the right under § 17A to assert an offset to the $1,250,000 obligation. A waiver is "the voluntary and intentional abandonment of a known right which, but for the waiver, would have been enforceable." *Nassau Trust Co.*, 56 N.Y.2d at 184, 451 N.Y.S.2d 663, 436 N.E.2d 1265. Plaintiffs claim that defendants waived any right to contest the payment of the $1,250,000 by failing to complete the audit prior to the closing. To survive summary judgment, plaintiffs must produce "evidence of an intentional relinquishment of a known right." *Hayes v. Crane Hogan Structural Sys.*, 191 A.D.2d 978, 979, 594 N.Y.S.2d 923 (4th Dep't 1993).

 If the fact-finder decides that Marine and Eagle Rock could only rely for offset purposes on a pre-closing audit, the alleged failure to perform such an audit may be an intentional and voluntary relinquishment of the right to offset the $1,250,000 under § 17A. *See Hadden v. Consolidated Edison Co.*, 45 N.Y.2d 466, 469, 410 N.Y.S.2d 274, 382 N.E.2d 1136 (1978) ("waiver ... may be accomplished ... by such conduct or failure to act as to evince an intent not to claim the purported advantage"). But there is no waiver where the failure to exercise this right was the result of "negligence, oversight,

or thoughtlessness." *Agati v. Agati*, 92 A.D.2d 737, 737, 461 N.Y.S.2d 95 (4th Dep't), *appeal denied*, 59 N.Y.2d 830, 464 N.Y.S.2d 743, 451 N.E.2d 490 (1983). Accordingly, we vacate the district court's grant of summary judgment on the claim for waiver.

The fact-finder may decide that Marine was entitled to rely on a post-closing audit to offset the $1,250,000. If so, plaintiffs would be required to prove that Marine and Eagle Rock waived this right in some manner other than by signing the Settlement Agreement. But plaintiffs have failed to produce any such evidence. Therefore, if the fact-finder decides that Marine and Eagle Rock were entitled to rely on a post-closing audit, judgment on the waiver claim should be entered for defendants.

## CONCLUSION

We affirm in part and vacate in part the judgment of the district court. The judgment on the claim of promissory estoppel is affirmed. The judgment on the claims for breach of contract and waiver is affirmed in part and vacated in part, as stated above. Finally, we affirm the district court's judgment on the claim of equitable estoppel raised before the district court, but we direct the district court to consider whether plaintiffs may raise their equitable estoppel claim based upon defendants' alleged nondisclosure of the completion of a pre-closing audit, and, if so, to decide the merits of the claim. The case is remanded to the district court for further proceedings consistent with this opinion.

2. Because this affidavit is neither part of the Record on Appeal, nor included on the district court's docket sheet, we are unsure that it was ever filed with the district court. However, the parties have included it within the Joint Appendix, so we presume that it was before the district court.