11-1204-cv
Stephenson v. PricewaterhouseCoopers, LLP.

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

**AMENDED SUMMARY ORDER**

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated Term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, at 500 Pearl Street, in the City of New York, on the 13th day of June, two thousand twelve.

Present:    ROBERT A. KATZMANN,
            BARRINGTON D. PARKER,
            RICHARD C. WESLEY,
                    *Circuit Judges.*

_____

G. PHILIP STEPHENSON, as Trustee of the Philip Stephenson Revocable Living Trust,

        *Plaintiff-Appellant*,

        - v -                         No. 11-1204-cv

PRICEWATERHOUSECOOPERS, LLP, an Ontario Limited Liability Partnership,

        *Defendant-Appellee.*\*

_____

For Plaintiff-Appellant:      ALFRED N. METZ (Herbert Irwin Deutsch, Jeremy E. Deutsch, Christian V. Cangiano, *on the brief*), Deutsch, Metz & Deutsch, LLP, New York, N.Y.

For Defendant-Appellee:       CHRISTOPHER LANDAU, P.C. (Emily P. Hughes, *on the brief*), Kirkland & Ellis LLP, Washington, D.C. (Emily Nicklin, P.C., Timothy A. Duffy, P.C., Amy E. Crawford, Kirkland & Ellis LLP, Chicago, Ill., *on the brief*)**.**

_____

\* The Clerk of Court is directed to amend the caption as noted.

Appeal from the United States District Court for the Southern District of New York (Holwell, *J.*).

**ON CONSIDERATION WHEREOF, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the judgment of the district court is **AFFIRMED**.

Plaintiff-Appellant G. Philip Stephenson, as Trustee of the Philip Stephenson Revocable Living Trust ("Stephenson"), appeals from March 31, 2010 and March 18, 2011 judgments of the United States District Court for the Southern District of New York (Holwell, *J.*), granting PricewaterhouseCoopers, LLP's ("PWC") motions to dismiss plaintiff's corrected amended complaint and his second amended complaint (the "SAC") for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). In April 2008, Stephenson invested $60 million in Greenwich Sentry, LP ("Greenwich Sentry"), a Delaware limited partnership operating as a "feeder fund" into Bernard L. Madoff Investment Securities, LLC, which was later revealed to be a Ponzi scheme. Between 2006 and 2008, PWC, a limited liability partnership organized pursuant to the laws of Ontario, Canada, was Greenwich Sentry's auditor and issued Greenwich Sentry unqualified audit reports attesting to the accuracy of Greenwich Sentry's financial statements. In December 2008, after learning of the Madoff Ponzi scheme, Stephenson attempted to withdraw the entirety of his Greenwich Sentry investment, but it was gone. On January 26, 2009, Stephenson commenced a lawsuit against PWC, among others.

Stephenson's corrected amended complaint, filed on July 2, 2009, alleged claims against PWC under New York law for professional malpractice[2] and fraud. In a memorandum opinion and order dated March 31, 2010, the district court dismissed Stephenson's malpractice claim

---

[2] "Under New York law, professional malpractice is a species of negligence." *Hydro Investors, Inc. v. Trafalgar Power Inc.*, 227 F.3d 8, 15 (2d Cir. 2000) (internal quotation marks and alteration omitted).

2

principally on the grounds that it was preempted by New York's Martin Act, N.Y. Gen. Bus. L. § 352-c (the "Martin Act"). *Stephenson v. Citco Grp. Ltd.*, 700 F. Supp. 2d 599, 612-16 (S.D.N.Y. 2010) ("*Stephenson I*"). The district court also dismissed Stephenson's fraud claim, but without prejudice, finding that the corrected amended complaint failed adequately to plead that PWC acted with scienter. *Id.* at 624. On June 18, 2010, Stephenson filed the SAC, alleging only fraud. By a memorandum opinion and order entered on March 6, 2011, the district court dismissed the SAC for largely the same reason it dismissed Stephenson's fraud claim in the corrected amended complaint, *i.e.* failure adequately to plead scienter. *Stephenson v. PricewaterhouseCoopers, LLP*, 768 F. Supp. 2d 562, 581 (S.D.N.Y. 2011) ("*Stephenson II*"). We assume the parties' familiarity with the remaining facts and procedural history of the case.

We review *de novo* a district court's dismissal of a complaint for failure to state a claim. *Slayton v. Am. Express Co.*, 604 F.3d 758, 766 (2d Cir. 2010). "In conducting this review, we assume all 'well-pleaded factual allegations' to be true, and 'determine whether they plausibly give rise to an entitlement to relief.'" *Selevan v. N.Y. Thruway Auth.*, 584 F.3d 82, 88 (2d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)).

We first consider Stephenson's argument that the district court erred in dismissing his malpractice claim as preempted by the Martin Act. After the briefs in this appeal were filed, the New York Court of Appeals held that the Martin Act does not preempt common law claims not premised on violations of the Act. *Assured Guar. (UK) Ltd. v. J.P. Morgan Inv. Mgmt. Inc.*, 18 N.Y.3d 341, 353 (2011). Accordingly, the district court's dismissal of Stephenson's common law malpractice claim on this ground was error.

PWC argues that this Court should nevertheless affirm the district court's dismissal on the grounds that: (1) Stephenson lacks standing to bring a malpractice claim directly (rather than

3

derivatively); (2) the corrected amended complaint failed to plead facts demonstrating that PWC owed Stephenson any legal duty; and (3) Stephenson cannot plead facts to demonstrate that PWC caused his injury.

Under settled Delaware law,[3] to determine whether a claim is direct or derivative courts must consider: "(1) who suffered the alleged harm (the corporation or the suing stockholders, individually); and (2) who would receive the benefit of any recovery or other remedy (the corporation or the stockholders individually)[.]" *Tooley v. Donaldson, Lufkin & Jenrette, Inc.*, 845 A.2d 1031, 1033 (Del. 2004). "The main dividing line between direct and derivative claims styled as 'fraudulent inducement,' therefore, [is] whether the plaintiff has alleged some injury other than that to the corporation." *Big Lots Stores, Inc. v. Bain Capital Fund VII, LLC*, 922 A.2d 1169, 1177 (Del. Ch. 2006). While the *Tooley* test was developed in the context of a corporation, under Delaware law "[t]he determination of whether a claim is derivative or direct in nature is substantially the same for corporate cases as it is for limited partnership cases." *Albert v. Alex. Brown Mgmt. Servs., Inc.*, No. Civ.A. 762-N, 2005 WL 2130607, at *12 (Del. Ch. Aug. 26, 2005).

The district court correctly found that Stephenson has standing to bring a claim that PWC's negligence induced him to invest in Greenwich Sentry (the "inducement" claim), but that he lacks standing to assert a claim based on his decision to remain invested in Greenwich Sentry through December 2008 (the "holding" claim). Stephenson's inducement claim arose from his alleged reliance, as an individual investor, on PWC's unqualified audits of Greenwich Sentry.

---

[3] Neither party contests the district court's determination that whether Stephenson has standing as a limited partner to bring claims against PWC in his own right is a question governed by Delaware law, the state in which Greenwich Sentry was organized. *Stephenson I*, 700 F. Supp. 2d at 608.

By contrast, Stephenson cannot "prevail [on his holding claim] without showing injury to the [partnership as a whole]": his holding claim involves no "harm" to an individual partner and seeks no "recovery" for any individual partner, distinct from other partners. *See Tooley*, 845 A.2d at 1039. Therefore, it is a derivative claim that Stephenson lacks standing to assert directly.

Although Stephenson has standing to assert his inducement claim directly, the complaint fails to demonstrate that PWC owed him a duty as a potential investor in the fund.[4] To prevail on a negligence claim under New York law against an accountant with which the plaintiff has no contractual relationship, the plaintiff must show that (1) the accountant was aware "that the financial reports were to be used for a particular purpose"; (2) "in the furtherance of which a known party . . . was intended to rely"; and (3) some conduct on the part of the accountant linking it to the party which "evinces the accountant['s] understanding of the party['s] . . . reliance" (the "*Credit Alliance* test"). *Credit Alliance Corp. v. Arthur Andersen & Co.*, 65 N.Y.2d 536, 551 (1985). "The New York Court of Appeals has described these three factors as establishing a relationship approaching that of privity between the accountant and the third party claiming negligence." *Securities Investor Prot. Corp. v. BDO Seidman, LLP*, 222 F.3d 63, 73 (2d Cir. 2000) (internal quotation marks and alteration omitted).

Here, Stephenson cannot satisfy the "known party" prong of the *Credit Alliance* test. As the New York Court of Appeals recently reiterated, "[t]he words 'known party . . . in the *Credit Alliance* test mean what they say," and where the complaint does not allege that the defendant knew "the identity of the specific non-privity party who would be relying," a negligence claim

_____

[4] Because the issue of whether PWC owed Stephenson a legal duty as a potential investor is purely legal and necessitates no additional fact-finding, we exercise our discretion to consider it in the first instance. *See Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 302 (2d Cir. 2006).

5

fails. *See Sykes v. RFD Third Ave. 1 Assocs., LLC*, 15 N.Y.3d 370, 373-74 (2010) (internal quotation marks omitted). Because Stephenson was nothing more than a "prospective limited partner[], unknown at the time and who might be induced to join [the partnership]," *see White v. Guarente*, 43 N.Y.2d 356, 361 (1977), he was not a known party to PWC prior to his investment in Greenwich Sentry and thus cannot maintain a claim for malpractice against PWC under an inducement-to-invest theory.

We turn next to Stephenson's argument that the district court erred in dismissing his fraud claim as pleaded in the SAC. We are not persuaded. Under New York law, the elements of fraud are:

> (1) defendant made a representation as to a material fact; (2) such representation was false; (3) defendant[] intended to deceive plaintiff; (4) plaintiff believed and justifiably relied upon the statement and was induced by it to engage in a certain course of conduct; and (5) as a result of such reliance plaintiff sustained pecuniary loss[.]

*Ross v. Louise Wise Servs., Inc.*, 8 N.Y.3d 478, 488 (2007) (internal quotation marks omitted).

Under Federal Rule of Civil Procedure 9(b), the scienter element of a fraud claim must be pled with particularity. Although under this rule "scienter need not be alleged with great specificity, plaintiffs are still required to plead the factual basis which gives rise to a '*strong inference*' of fraudulent intent." *Wexner v. First Manhattan Co.*, 902 F.2d 169, 172 (2d Cir. 1990) (emphasis added) (applying Rule 9(b) prior to the passage of the Private Securities Litigation Reform Act of 1995).[5]

---

[5] As the district court observed, the relationship between pleading federal securities fraud and common law fraud in federal court is complex. *Stephenson II*, 768 F. Supp. 2d at 571 n.1; *Stephenson I*, 700 F. Supp. 2d at 620 n.19. In particular, following the Supreme Court's decision in *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007), it is unclear whether the standard for pleading scienter under federal securities law is the same as the standard for pleading scienter under common law fraud. *Stephenson II*, 768 F. Supp. 2d at 571 n.1. Here, however, the district court found that "the parties appear to have no problem" with applying the

Intent to deceive can be demonstrated by recklessness of a sufficient degree to create an inference of intent. *See Chill v. Gen. Elec. Co.*, 101 F.3d 263, 269 (2d Cir. 1996) ("An egregious refusal to see the obvious, or to investigate the doubtful [can support] an inference of . . . recklessness." (internal quotation marks omitted)); *accord Caprer v. Nussbaum*, 36 A.D.3d 176, 195 (N.Y. App. Div. 2006). However, the reckless conduct must be "at the least, conduct which is highly unreasonable and which represents an extreme departure from the standards of ordinary care . . . to the extent that the danger was either known to the defendant or so obvious that the defendant must have been aware of it." *Novak v. Kasaks*, 216 F.3d 300, 308 (2d Cir. 2000) (internal quotation marks omitted). Applying this standard, this Court has "found allegations of recklessness to be sufficient where plaintiffs alleged facts demonstrating that defendants failed to review or check information that they had a duty to monitor, or ignored obvious signs of fraud." *Id.* "At the same time, however, [this Court] ha[s] identified several important limitations on the scope of . . . fraud [claims] based on reckless conduct." *Id.* at 309; *see also South Cherry St., LLC v. Hennessee Grp., LLC*, 573 F.3d 98, 110 (2d Cir. 2009). In particular, "there are limits to the scope of liability for failure adequately . . . [to] monitor the allegedly fraudulent behavior of others." *Novak*, 216 F.3d at 309. "[T]he failure of a non-fiduciary accounting firm to identify problems with [a company's] internal controls and accounting practices does not constitute reckless[ness]." *Id.* Likewise, "allegations of [generally accepted accounting principles] violations or accounting irregularities, standing alone, are insufficient to state a . . . fraud claim" absent "evidence of corresponding fraudulent intent." *Id.* (internal quotation marks omitted).

---

*Tellabs* rule in the common law fraud context. *Id.* And, on appeal, neither party contests this aspect of the district court's decision. Accordingly, we assume, without deciding, that post-*Tellabs* cases concerning scienter under federal securities law are relevant to determining whether Stephenson pled common law fraud with sufficient particularity under Rule 9(b).

Finally, apart from pleading that an audit was so shoddy as to constitute "no audit at all," a complaint may sufficiently plead that an auditor acted recklessly by alleging that the "auditor disregarded specific 'red flags' that would place a reasonable auditor on notice that the audited company was engaged in wrongdoing to the detriment of its investors." *In re Tremont Sec. Law, State Law and Ins. Litig.*, 703 F. Supp. 2d 362, 370 (S.D.N.Y. 2010). But pleading the existence of red flags does not establish that a defendant was aware of those warning signals. *See South Cherry St.*, 573 F.3d at 112 (holding that a complaint failed to allege scienter where it was "replete with allegations that [the defendant] '*would*' have learned the truth" regarding a company's fraudulent conduct "if [it] had performed" the "'due diligence'" that it "promised" to the plaintiff) (emphasis added).

Applying these principles, we conclude that the district court properly dismissed the SAC for failure to allege that PWC's conduct was so reckless as to raise a "strong inference" that it intended to deceive Stephenson. The district court properly held that: (1) even if, as alleged in the SAC, PWC's audit failed to comply with generally accepted accounting standards, that would not raise an inference of an intent to defraud; (2) the SAC failed sufficiently to allege that PWC was aware of most of the red flags alleged by Stephenson; and (3) even those flags of which PWC was necessarily aware failed to raise an inference of an intent to defraud. *See, e.g.*, *Novak*, 216 F.3d at 309 ("[T]he failure . . . to interpret extraordinarily positive performance . . . as a sign of problems and thus to investigate further does not amount to recklessness."); *Chill*, 101 F.3d at 270 ("The fact that [the defendant] did not automatically equate record profits with misconduct cannot be said to be reckless."). Thus, we affirm the district court's dismissal of the SAC for failure adequately to plead scienter.

We have considered the parties' remaining arguments and find them to be without merit.

Accordingly, for the foregoing reasons, the judgment of the district court is **AFFIRMED**.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, CLERK