**ICOM HOLDING, INC.,**
**Plaintiff–Appellant,**

v.

**MCI WORLDCOM, INC.,**
**Defendant–Appellee.**

**Docket No. 00–7660.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 2, 2001.

Decided Jan. 22, 2001.

Philip S. Ross, Hoffinger, Friedland, Dobrish & Stern, P.C., New York, NY, for Plaintiff–Appellant.

Patrick C. Dunican, Jr., Gibbons, Del Deo, Dolan, Griffinger & Vecchione, P.C., New York, NY, for Defendant–Appellee.

Before SACK, SOTOMAYOR, and KATZMANN, Circuit Judges.

SACK, Circuit Judge:

The plaintiff ICOM, Inc., appeals from an order of the United States District Court for the Eastern District of New York (Joanna T. Seybert, *Judge* ) dismissing its complaint for failure to state a claim upon which relief can be granted. We now affirm the judgment of the district court, agreeing with its holding that the plaintiff's state-law breach of contract claims premised on the defendant's failure to install high-speed telecommunications circuits for the purpose of providing the plaintiff with local access telecommunication service are preempted by the federal Communications Act, 47 U.S.C. §§ 151, *et seq.*, and barred by the filed-rate doctrine.

## BACKGROUND

Through a series of letters dated August 19 through October 27, 1998, the plaintiff ICOM, Inc., and the defendant MCI Worldcom, Inc., entered into a contract under which the defendant agreed to provide the plaintiff with certain telecommunications services and equipment. Among those services were the installation and operation of six DS3 circuits, or high speed network connections, between Manhattan and Westbury, New York, as a means of providing the plaintiff with local access telecommunications service. In return, the plaintiff agreed to pay a lump sum for each circuit's installation and a recurring monthly amount for the system's ongoing operation. The defendant promised to complete the installation of the circuits by November 20, 1998.

Although the plaintiff has tendered all payments and otherwise discharged its duties under the contract, the defendant has not installed the high-speed connections. The plaintiff asserts that as a result

of this alleged breach, it has been unable to perform contracts with third parties that it executed in reliance on the defendant's promises and has thereby suffered financial losses.

The plaintiff filed suit on June 17, 1999 in the Supreme Court of the State of New York, Nassau County, claiming breach of contract under state law. On July 28, 1999, the defendant removed the case to the United States District Court for the Eastern District of New York, and in a memorandum decision and order dated April 20, 2000, the district court granted the defendant's motion to dismiss the suit, holding that the plaintiff's claims were preempted by the federal Communications Act of 1934, 47 U.S.C. §§ 151, *et seq.*, and barred by the filed-rate doctrine.

This appeal followed.

## DISCUSSION

### I. Standard of Review

■ We review *de novo* a district court's grant of a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6), accepting all allegations in the complaint as true and drawing all inferences in favor of the plaintiff. *See Friedl v. City of New York,* 210 F.3d 79, 83 (2d Cir.2000). We may affirm only if "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Harris v. City of New York,* 186 F.3d 243, 250 (2d Cir.1999) (quoting *Conley v. Gibson,* 355 U.S. 41, 45–46, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957)).

### II. The Filed–Rate Doctrine

Federal law requires every common carrier of communications services to file with the Federal Communications Commission ("FCC") a list of tariffs, which are "schedules showing all charges ... and showing the classifications, practices, and regulations affecting such charges." 47 U.S.C. § 203(a). Carriers are forbidden to "extend to any person any privileges or facilities in such communication, or employ or enforce any classifications, regulations, or practices affecting such charges, except as specified" in those filed tariffs. *Id.* § 203(c). The goal of these provisions is to ensure that all purchasers of communications services receive the same federally regulated rates. *See MCI Telecomms. Corp. v. American Tel. & Tel. Co.,* 512 U.S. 218, 229–30, 114 S.Ct. 2223, 129 L.Ed.2d 182 (1994).

■ Interpreting these provisions, the Supreme Court has adopted the filed-rate doctrine, which holds that "'the rate of the carrier duly filed is the only lawful charge'" and that "'[d]eviation from it is not permitted upon any pretext.'" *American Tel. & Tel. Co. v. Central Office Tel., Inc.,* 524 U.S. 214, 222, 118 S.Ct. 1956, 141 L.Ed.2d 222 (1998) (quoting *Louisville & Nashville R. Co. v. Maxwell,* 237 U.S. 94, 97, 35 S.Ct. 494, 59 L.Ed. 853 (1915)). Under this rule, rates filed with the FCC "bind both carriers and [customers] with the force of law." *Lowden v. Simonds–Shields–Lonsdale Grain Co.,* 306 U.S. 516, 520, 59 S.Ct. 612, 83 L.Ed. 953 (1939). The rights and liabilities defined by the tariff "cannot be varied or enlarged by either contract or tort of the carrier," *Central Office,* 524 U.S. at 227, 118 S.Ct. 1956 (quoting *Keogh v. Chicago & Northwestern Ry. Co.,* 260 U.S. 156, 163, 43 S.Ct. 47, 67 L.Ed. 183 (1922)), and therefore any state-law claim seeking to enforce a contractual provision that differs from a filed rate is preempted by federal law. *See Cahnmann v. Sprint Corp.,* 133 F.3d 484, 489 (7th Cir.1998) ("[S]ince the federal regulation defines the entire contractual relation between the parties, there is no contractual undertaking left over that state law might enforce.").

### III. Application of the Filed–Rate Doctrine

The defendant argues, and the district court held, that the filed-rate doctrine bars the plaintiff's claims because the subject matter of the underlying contract is en-

compassed within a filed tariff and because enforcement of the contract would impermissibly modify the tariff's terms.

■ MFS Tariff No. 2, which the defendant has filed with the FCC, governs the provision of the type of circuits contemplated by the contract. The tariff also prescribes the rights and liabilities of the parties with respect to the sale and servicing of such circuits. Specifically, Section 2.1.6 of the tariff, entitled "Provisions of Equipment and Facilities," states that the defendant "shall use reasonable efforts to make available services to a Customer on or before a particular date" but that it "does not guarantee availability by any such date and shall not be liable for any delays in commencing service to any Customer." The tariff further provides that the liability of the defendant

> for damages arising out of the furnishing of its Services, including but not limited to mistakes, omissions, interruptions, delays, or errors, or other defects, representations, or use of these services or arising out of the failure to furnish the service ... shall be limited to the extension of allowances ... as set forth [elsewhere in the tariff]. The extension of such allowances for interruption shall be the sole remedy of the Customer and the sole liability of [MCI]. [MCI] will not be liable for any direct, indirect, incidental, special, consequential, exemplary or punitive damages to Customer as a result of any [MCI] service, equipment or facilities, or any acts or omissions or negligence of [MCI's] employees or agents.

The defendant argues that the plaintiff's state-law claims would modify these provisions by enforcing the contract's guarantee of an installation completion date and by holding MCI liable for damages beyond those prescribed in the tariff. It therefore contends that such claims are preempted and barred by the filed-rate doctrine.

We agree with the defendant and conclude, as did the district court, that the Supreme Court's recent decision in *Central Office* controls and requires dismissal of the plaintiff's claims. In *Central Office*, the Court held that the filed-rate doctrine bars state-law claims not only that pertain directly to the *price* of telecommunications services subject to an FCC filing, but also state-law claims that concern various *non-price* aspects, such as "service, provisioning, and billing options." *Central Office*, 524 U.S. at 220, 118 S.Ct. 1956. The plaintiff in that case argued, as the plaintiff does here, that the doctrine was inapplicable "because this case does not involve rates or ratesetting, but rather involves the provisioning of services" or equipment. *Id.* at 223, 118 S.Ct. 1956. The Court responded by noting that rates

> do not exist in isolation. They have meaning only when one knows the services to which they are attached. Any claim for excessive rates can be couched as a claim for inadequate services and vice versa. If discrimination in charges does not include non-price features, then the carrier could defeat the broad purpose of the statute by the simple expedient of providing an additional benefit at no additional charge.

*Id.* (internal quotation marks omitted).

In this case, as in *Central Office*, the state-law claims "pertain to subjects that are specifically addressed by the filed tariff." *Id.* at 225, 118 S.Ct. 1956 (emphasis omitted). Here, as there, the plaintiff's success on its breach of contract claims would result in discriminatory "privileges" for the plaintiff in the form of a guaranteed installation date and compensatory damages to which other customers subject to MCI's filed tariff would not be entitled. And in both situations, the result sought by the plaintiff "would [be] in flat contradiction of the tariff." *Id.* "Because [the plaintiff] asks for privileges not included in the tariff, its state-law claims are barred." *Id.* at 226, 118 S.Ct. 1956.

We are unpersuaded by the plaintiff's effort to distinguish *Central Office* on the ground that the contract in this case does

not involve "services" but concerns only the "installation" of equipment, a subject, the plaintiff maintains, that is not addressed by MCI's filed tariff. MCI was undoubtedly providing a service to the plaintiff under the contract. The contract says so: It calls for MCI to install six DS3 circuits for the purpose of providing the plaintiff with "local access telecommunications *service[s]*." (Emphasis added). And the complaint says so: It asserts that under the contract, MCI was "to provide certain specific telecommunications goods *and services* . . . to [the plaintiff] including . . . the installation *and operation* of 6 DS3 circuits" (emphasis added), and refers to the defendant's promised performance under the contract as "the Services"—a term that expressly includes "the installation and operation of 6 DS3 circuits." *

Our conclusion that the relief sought in the plaintiff's state-law claims would conflict with the provisions of the filed tariff also requires us to reject the plaintiff's attempt to seek shelter in the Savings Clause of the Communications Act, 47 U.S.C. § 414. That section, which provides that nothing in the federal Act "shall in any way abridge or alter the remedies now existing at common law or by statute," *id.*, "preserves only those rights that are not inconsistent with the statutory filed-tariff requirements." *Central Office*, 524 U.S. at 227, 118 S.Ct. 1956. The rights under which the plaintiff makes its claims are indeed inconsistent with the applicable tariff and are therefore not preserved.

## CONCLUSION

For the foregoing reasons, the judgment of the district court is affirmed.

---

* We thus need not reach the issue of whether, under *Central Office*, a "service" constitutes *any* nonprice term for which the customer pays and to which the carrier is bound under a contract the subject matter of which is covered by a filed tariff. *See Central Office*, 524 U.S. at 223–26, 118 S.Ct. 1956.