Michael **GALLOWAY**, Plaintiff,

v.

**SUFFOLK COUNTY CORRECTIONAL FACILITY, Wesley Bednowski and Sgt. Welenski, Defendants.**

**Michael Galloway, Plaintiff,**

v.

**Suffolk County Correctional Facility, and Lt. Preston J. Singer, Defendants.**

**Michael Galloway, Plaintiff,**

v.

**Suffolk County Correctional Facility, High Impact Incarceration Program and Wesley Bednowski, Defendants.**

Nos. 00CV1620 (ADS)(WDW), 00CV2286 (ADS)(WDW), 00CV4241 (ADS)(WDW).

United States District Court, E.D. New York.

Nov. 5, 2002.

---

Robert E. Harlow, Esq., Oceanside, NY, for Plaintiff.

Suffolk County Attorney's Office by Assistant County Attorney Arlene S. Zwilling, Hauppauge, NY, for Defendants.

## MEMORANDUM OF DECISION AND ORDER

SPATT, District Judge.

The plaintiff Michael Galloway ("Galloway" or the "plaintiff") alleges that the defendants the Suffolk County Correctional Facility (the "Correctional Facility"), Wesley Bednowski ("Bednowski"), Sergeant Welenski ("Welenski"), Lieutenant Preston J. Singer ("Singer") and the High Impact Incarceration Program (the "HIIP") (collectively, the "defendants") deprived him of his right to due process under the United States Constitution when they removed him twice from the HIIP in violation of 42 U.S.C. § 1983, N.Y. Mental Hyg. § 22.03 and N.Y. Comp.Codes R. & Regs. tit. 14, § 1020.9. Presently before the Court is a motion by the defendants for judgment on the pleadings pursuant to Rule 12(c) of the Federal Rules of Civil Procedure.

## I. BACKGROUND

### A. The Procedural History

The present case is a consolidated action arising out of three separate actions: *Galloway v. Bednowski,* No. 00CV1620 (E.D.N.Y. filed Mar. 20, 2000); *Galloway v. Suffolk County Corr. Facility,* No. 00CV2286 (E.D.N.Y. filed Apr. 20, 2000); and *Galloway v. Suffolk County Corr. Facility,* No. 00CV4241 (E.D.N.Y. filed July 20, 2000). On June 30, 2001, United States Magistrate Judge William D. Wall consolidated the three actions under docket number 00CV1620. On August 14, 2001, the

plaintiff filed the Consolidated Amended Complaint (the "Complaint").

## B. The Complaint

### 1. The Parties

The facts are taken from the Complaint unless otherwise noted. The plaintiff is a resident of Suffolk County. The Correctional Facility is a penal institution in Suffolk County. Bednowski is the appointed Warden and Chief Administrative Officer of the Correctional Facility and the HIIP. Welenski and Singer are corrections officers at the Correctional Facility. Also, each served as the director of the HIIP for a period of time relevant to this action. The HIIP is a program designed to assist incarcerated, parole violators with substance abuse problems.

### 2. The Facts

In fall 1997, the plaintiff was incarcerated at the Correctional Facility on a parole violation. On October 4, 1997, the plaintiff signed a contract and agreed to participate in the HIIP instead of being sentenced as a parole violator. The contract provided that the plaintiff would be released from custody upon his successful completion of the program.

On November 12, 1997, the Correctional Facility gave the plaintiff a misbehavior report alleging several violations of its Rules and Regulations Handbook. Although the specific violations are not provided, the Complaint alleges that the violations occurred outside the "purview" of the HIIP. Shortly thereafter, Welenski, the director of the HIIP at that time, and other unnamed corrections officers removed the plaintiff from the HIIP without providing him any written notice of why he was being removed or what review process was available to him. On December 1, 1997, which was the date that the plaintiff was to be released upon satisfactory completion of the HIIP, he was allegedly held over for a final, parole-revocation hearing; was found guilty of a parole violation; and was sentenced to a period of incarceration for ninety-three days.

In February 2000, the plaintiff was again incarcerated at the Correctional Facility on a parole violation. On February 21, 2000, the plaintiff signed a contract and agreed to participate in the HIIP instead of being sentenced as a parole violator. The contract provided that the plaintiff would be released from custody upon his successful completion of the program. On March 23, 2000, Singer, the director of the HIIP at that time, gave the plaintiff a "document" stating that he was no longer a participant in the HIIP. The "document" stated that Singer discharged him from the program based upon the request of one Dorothy Picente a counselor in the HIIP. The "document" did not set forth the specific reasons for the discharge and did not contain any notice of the right to request a review of the decision. The plaintiff alleges that this removal procedure violated his right to due process under the Constitution.

Next, the plaintiff alleges that he was ignored when he tried to resolve the issue of his discharge in the "informal grievance process (verbal)". Thereafter, the plaintiff allegedly requested a formal grievance form but an unspecified individual denied that request. Also, the plaintiff allegedly sent a letter to the defendants but received no response. Then, the plaintiff commenced an Article 78 proceeding on the ground that the HIIP violated his right to due process and that he should be given the agreed-upon cancellation of delinquency for the parole violation. That proceeding purportedly terminated because of unspecified procedural difficulties. Finally, the plaintiff alleges that he was held over for a final parole-revocation hearing, was

found guilty of a parole violation and was sentenced to a period of incarceration for about ninety-six days.

The Complaint consists of three claims. The first claim alleges a violation of Section 1983 due to the plaintiff's removal from the HIIP in November 1997 without proper due process. The second claim alleges a violation of Section 1983 due to the plaintiff's removal from the HIIP in March 2000 without proper due process. The third claim alleges a violation of Section 1983, N.Y. Mental Hyg. § 22.03 and N.Y. Comp.Codes R. & Regs. tit. 14, § 1020.9 in that the HIIP adopted and maintained a policy of involuntarily removing participants from the program without due process by relying on language inserted in its application for entry and conditions of participation which purports to either waive the right to due process or consent to arbitrary and capricious removal from the program. The defendants move to dismiss the Complaint pursuant to Rule 12(c) on two grounds: (1) the plaintiff had no protected due process right to remain in the HIIP; and (2) Section 1983 cannot be based upon the alleged violation of a state law or regulation.

## II. DISCUSSION

### A. The Standard

The standard for a motion to dismiss under Rule 12(c) is the same as a motion under Rule 12(b)(6). *Irish Lesbian and Gay Org. v. Giuliani*, 143 F.3d 638, 644 (2d Cir.1998). The dismissal of a complaint for failure to state a claim pursuant to Rule 12(b)(6) is proper only where " 'it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief.' " *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir.2001) (quoting *Harris v. City of New York*, 186 F.3d 243, 247 (2d Cir.1999)). "At the Rule 12(b)(6)

stage, '[t]he issue is not whether a plaintiff is likely to prevail ultimately, but whether the claimant is entitled to offer evidence to support the claims. Indeed it may appear on the face of the pleading that a recovery is very remote and unlikely but that is not the test.' " *Sims v. Artuz*, 230 F.3d 14, 20 (2d Cir.2000) (quoting *Chance v. Armstrong*, 143 F.3d 698, 701 (2d Cir.1998)). In a Rule 12(b)(6) motion, a court's role is " 'merely to assess the legal feasibility of the complaint, not to assay the weight of the evidence which might be offered in support thereof.' " *Sims*, 230 F.3d at 20 (quoting *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities Inc.*, 748 F.2d 774, 779 (2d Cir.1984) (internal quotation marks omitted)).

In deciding a 12(b)(6) motion, a court must accept as true all material facts alleged in the complaint and draw all reasonable inferences in the nonmoving party's favor. *ICOM Holding*, 238 F.3d at 221. "To survive a motion to dismiss, [the plaintiff's] claims must be 'supported by specific and detailed factual allegations,' not stated 'in wholly conclusory terms.' " *Friedl v. City of New York*, 210 F.3d 79, 85–86 (2d Cir.2000) (quoting *Flaherty v. Coughlin*, 713 F.2d 10, 13 (2d Cir.1983)). Thus, "[d]ismissal is 'appropriate only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Friedl*, 210 F.3d at 83 (quoting *Harris*, 186 F.3d at 250). " 'This rule applies with particular force where the plaintiff alleges civil rights violations . . . .' " *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir.2000) (quoting *Chance*, 143 F.3d at 701).

In a motion to dismiss under Rule 12(b)(6), a court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judi-

cial notice may be taken." *Leonard F. v. Israel Disc. Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999). The Court decides the Rule 12(b)(6) motion based upon the Complaint, the documents appended and incorporated by reference and the matters of which judicial notice may be taken.

## B. Section 1983

To establish a claim under Section 1983, "a plaintiff must allege (1) that the challenged conduct was attributable at least in part to a person acting under color of state law, and (2) that such conduct deprived the plaintiff of a right, privilege or immunity secured by the Constitution or laws of the United States." *Eagleston v. Guido*, 41 F.3d 865, 876 (2d Cir.1994) (internal quotation marks and citations omitted). "Section 1983 itself creates no substantive rights; it provides only a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir.1993) (citations omitted).

In a Section 1983 claim, a court's first step is to identify the federal right allegedly infringed. *Albright v. Oliver*, 510 U.S. 266, 271, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994). Here, the plaintiff claims that the defendants deprived him of his right to procedural due process under the Fourteenth Amendment when they removed him from the HIIP twice without providing him the reasons for his removal and without notifying him of the available review process.

The Fourteenth Amendment provides in pertinent part that no State shall "deprive any person of life, liberty, or property, without due process of law...." U.S. Const. amend. XIV, § 1. That clause "protects the individual against arbitrary action of government." *Kentucky Dep't of Corrs. v. Thompson*, 490 U.S. 454, 460, 109 S.Ct. 1904, 1908, 104 L.Ed.2d 506 (1989)

(internal quotation marks and citations omitted). In a claim for denial of procedural due process, an inmate must allege that she had a protected liberty interest and that the state did not afford her the required process before taking away that interest. *See Bedoya v. Coughlin*, 91 F.3d 349, 351–352 (2d Cir.1996).

A liberty interest under the Fourteenth Amendment arises either directly from the Due Process Clause itself or from a state's laws. *Klos v. Haskell*, 48 F.3d 81, 86 (2d Cir.1995) (citing *Kentucky Dep't of Corrs.*, 490 U.S. at 460, 109 S.Ct. at 1908 and *Hewitt*, 459 U.S. at 466, 103 S.Ct. at 868). However, courts have restricted an inmate's liberty interests. *Id.* (illustrating that an inmate has no liberty interest in the commutation of her sentence, in staying in one correctional facility instead of another or in securing good-time credit for behavior in prison) (citations omitted).

The plaintiff sets forth three grounds to show a liberty interest under the Fourteenth Amendment: (1) New York gave him a liberty interest through its statutes and regulations that govern the HIIP; (2) the HIIP contract created anticipatory "good time"; and (3) the HIIP contract created an entitlement to substance abuse therapy coupled with a liberty interest in the form of the cancellation of his delinquency of the parole violation upon the successful completion of the program.

### 1. The State Conferred Liberty Interest

"For a liberty interest to be conferred by the state, two requirements must be met: (1) the state must have articulated specified substantive predicates which limit the discretion of state officials; and (2) it must have employed explicitly mandatory language, requiring state officials to follow those substantive predicates." *Klos*, 48

F.3d at 87 (internal quotation marks and citations omitted).

New York has not enacted specific legislation or regulations to govern the HIIP. *Cf. Klos,* 48 F.3d at 83–84 (enacting specific statutory and regulatory rules to govern the administration of the New York State Shock Incarceration Program). Nevertheless, the Complaint alleges that the New York State Mental Hygiene Law and its regulations govern the HIIP because it is a substance abuse program.

Under the Mental Hygiene Law, a substance abuse program is defined as

> [A]ny public or private person, corporation, partnership, agency, either profit or non-profit, or state or municipal government which provides substance abuse services, in either a residential or ambulatory setting, to persons who are substance abusers, substance dependent, in need of services to avoid becoming substance abusers, substance dependent or to significant others. Any person or entity providing such services as a minor part of a general health or counseling unit subject to regulations promulgated by the commissioner and other appropriate agencies shall not be considered a substance abuse program.

N.Y. Mental Hyg. Law § 1.03(42) (McKinney 1997 & 2002). The plaintiff argues that the HIIP is a substance abuse program because it involves sixty days of intensive, in-custody substance abuse therapy and a six month aftercare phase which is monitored by the Treatment Alternatives to Street Crime Program ("TASC") on behalf of the Suffolk County Department of Health Services. Also, the plaintiff argues that the only function of the HIIP is to provide substance abuse treatment services. Although the defendants do not directly respond to this argument, they concede that the HIIP assists individuals with substance abuse problems.

■ Accepting as true all material facts alleged in the Complaint and drawing all reasonable inferences in favor of the plaintiff—as the Court must—the plaintiff makes a sufficient showing that the HIIP is a substance abuse program governed by the Mental Hygiene Law. First, the plaintiff's February 2000 application states that the HIIP "is a 60 day highly structured program with a significant substance abuse treatment component." Application ¶ 3. The Court notes that the defendants make no argument or showing that this description of the HIIP is untrue.

Next, the Court looks to the Mental Hygiene Law and its regulations to determine whether New York has created specific "substantive predicates" that limit state officials' discretion when removing a participant from a substance abuse program. Turning initially to the Mental Hygiene Law itself, the statute does not appear to provide specific procedural rules that a director must follow before she removes a participant from a substance abuse program. *See* N.Y. Mental Hyg. Law Art. 1–91 (McKinney 2002).

However, a review of the regulations promulgated pursuant to the Mental Hygiene Law shows that they limit officials' discretion to remove a participant involuntarily from a substance abuse program. *See* N.Y. Comp.Codes R. & Regs. tit. 14, § 1020.9(f) (2002). For example, the director must consult with the medical, counseling and administrative staff before she removes a participant from a substance abuse program. *See id.* § 1020(f)(1). Also, the director must provide a participant with:

> (i) a written statement setting forth the reason(s) for discharge; and (ii) written notice of his/her right to request review of the decision by the program director of his/her designee. This notice shall

also contain a statement that the client may seek advise from outside resources in preparing for the program director/designee review of the discharge decision. *See id.* § 1020.9(f)(3)(i)-(ii).

These regulations show that New York has set forth specific "substantive predicates" which limit the state officials' discretion before they remove a participant from a substance abuse program. Before an involuntary removal, they must provide a participant with a written statement of the reasons for the discharge and written notice of the right to request review of that decision. These requirements are mandatory. *See id.*

In spite of these clear procedural due process requirements, the defendant argues that the HIIP contract shows that the plaintiff has no liberty interest because he agreed that the decision to remove him from the program was final. The plaintiff's February 2000 application provides that "I understand that if I fail to complete the program, for any reason, my [parole] hearing will be held on the adjourned date that I have just requested. I understand that the HIIP program is run by the Suffolk County Correctional Facility and that their decision to remove me from the program for any reason is final and is not an issue that I can raise at my parole revocation hearing." Application ¶ 6.

In *Klos*, 48 F.3d at 81, an inmate signed a "Memo of Agreement" detailing the terms and conditions of his participation in the New York State Shock Incarceration Program (the "Shock Program"). *Id.* at 83-84. The Memo contained a provision that stated in pertinent part: "*I understand that my participation in the program is a privilege that may be revoked at any time at the sole discretion of the Commissioner.*" *Id.* at 83 (emphasis in original). The Second Circuit concluded that this provision unequivocally notified the inmate that the Commissioner had the "sole discretion" to remove him from the Shock Program. *Id.* at 88.

Unlike the situation in *Klos*, where the Memo stated that participation in the program was a privilege, the HIIP contract had no such provision. Also, unlike the facts in *Klos*, where the Memo stated that the Commissioner had the "sole discretion" to remove a participant, the HIIP contract stated merely that the Correctional Facility's decision to remove a participant from the program was final; it did not state that the Correctional Facility had the "sole discretion" to remove a participant or that it need not comply with the statutory or regulatory due process procedures.

In light of the regulatory procedures governing the removal of participants in the HIIP, namely that participants are entitled to reasons and notice of the available review process, the Court finds that the Complaint adequately alleges a state conferred liberty interest. Because the Complaint adequately pleads a protected right, the Court need not address the plaintiff's remaining grounds that allegedly establish a liberty interest.

### III. CONCLUSION

Based upon the foregoing, it is hereby

**ORDERED,** that the motion to dismiss the Complaint pursuant to Rule 12(c) on the ground that the plaintiff had no protected right to remain in the High Impact Incarceration Program is denied; and it is further

**ORDERED,** that the parties are directed to contact United States Magistrate Judge William D. Wall immediately to schedule the completion of discovery.

**SO ORDERED.**