23-8083
Rowe Plastic Surgery of New Jersey, L.L.C., et al. v. Aetna Life Insurance Company

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

### SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Thurgood Marshall United States Courthouse, 40 Foley Square, in the City of New York, on the 27th day of September, two thousand twenty-four.

PRESENT:
>           DENNY CHIN,
>           SUSAN L. CARNEY,
>           MYRNA PÉREZ,
>                   *Circuit Judges.*

_____

ROWE PLASTIC SURGERY OF NEW JERSEY,
L.L.C., NORMAN MAURICE ROWE, M.D.,
M.H.A., L.L.C.,

>           *Plaintiffs-Appellants*,

>           v.                                                        No. 23-8083

AETNA LIFE INSURANCE COMPANY,

>           *Defendant-Appellee*.

_____

**FOR PLAINTIFFS-APPELLANTS:**

BRENDAN J. KEARNS (Michael Baglio, *on the brief*), Lewin & Baglio, LLP, Westbury, NY.

**FOR DEFENDANT-APPELLEE:**

ADAM J. PETITT (Scott T. Garosshen, Robinson & Cole LLP, Hartford, CT, *on the brief*), Robinson & Cole LLP, New York, NY.

Appeal from a judgment of the United States District Court for the Southern District of New York (Rakoff, *J.*).

**UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED** that the district court's judgment is **AFFIRMED**.

This case arises from a payment dispute between two medical providers and an insurance company.

Plaintiffs-Appellants Rowe Plastic Surgery of New Jersey, L.L.C. and Norman Maurice Rowe, M.D., M.H.A., L.L.C. (the "Providers") completed, through their non-party affiliated physicians, a surgical procedure on ELS, a patient insured by Defendant-Appellee Aetna Life Insurance Company ("Aetna"), in November 2020. The Providers contend that Aetna was contractually obligated to reimburse them at a rate of "80% Reasonable and Customary"[1] for the patient's surgery, per a call with Aetna's employee. During the proceedings, Aetna produced a transcript of that call. Following the surgery, the Providers billed Aetna $300,000 for the surgery

---

[1] The Providers assert that "80% Reasonable and Customary" is "an industry pricing term that means . . . an amount equal to 80% of the UCR[,]" and UCR refers to a "method [where] the insurer uses a percentile threshold of the costs for a service rendered by similar providers in the same geographic area or marketplace to price a claim for medical services." J. App'x at 32–33 (Amended Complaint ¶¶ 26, 29). Given the procedural posture of this case, we do not need to seek any greater precision as to the meaning of these terms.

and Aetna reimbursed them $77,567.94.

In June 2023, the Providers filed suit against Aetna alleging claims for breach of contract, unjust enrichment, promissory estoppel, and fraudulent inducement. Aetna then moved to dismiss the Providers' Amended Complaint. The district court granted the motion and entered judgment in favor of Aetna, dismissing the Amended Complaint under Rule 12(b)(6). The Providers now challenge the court's reference to the call transcript in its decision and the decision to dismiss their Amended Complaint more generally. We assume the parties' familiarity with the remaining underlying facts, the procedural history, and the issues on appeal.

I. **Standard of Review**

We review a district court's grant of a motion to dismiss under Rule 12(b)(6) de novo, "accepting all allegations in the complaint as true and drawing all inferences in favor of the plaintiff." *ICOM Holding, Inc. v. MCI Worldcom, Inc.*, 238 F.3d 219, 221 (2d Cir. 2001). A complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Where it appears "beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," dismissal will be affirmed. *ICOM Holding, Inc.*, 238 F.3d at 221 (citation omitted).

In deciding a motion to dismiss, the court considers only the "'legal feasibility' of [the] complaint." *Goel v. Bunge, Ltd.*, 820 F.3d 554, 558 (2d Cir. 2016) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)). In assessing the complaint's "legal feasibility," the court may review any documents attached to the complaint as exhibits, incorporated by reference, or integral to its allegations. *Kramer v. Time Warner Inc.*, 937 F.2d 767, 773 (2d Cir. 1991). A document is considered integral to the complaint when "the

3

complaint relies heavily upon its terms and effect." *Goel*, 820 F.3d at 559 (quoting *Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)).

## II.      Evidentiary Issue

In their briefs on appeal, the Providers contested the district court's decision to consider the call transcript in assessing the sufficiency of the Amended Complaint.   Yet, both during oral argument in this court and oral argument in the district court, counsel for the Providers conceded that the call transcript is integral to the Amended Complaint.   *See* Oral Arg. Audio Recording at 5:17–5:55; Appellee's Suppl. App'x at 10:12–16.   We agree that it is integral to the Amended Complaint and therefore also conclude that the district court did not err in considering it.[2]

First, the Amended Complaint describes the October 2020 call as one in which an Aetna employee "represented that [Aetna] would reimburse [the Providers for] the services rendered to [the patient] based upon 80% Reasonable and Customary."   J. App'x at 31–32 (Amended Complaint ¶ 20).

Second, the phrase "80% Reasonable and Customary," which the Providers acknowledge was used in the October 2020 call and in no other communication between the Providers and Aetna, is raised no fewer than 14 times throughout the Amended Complaint.

Third, the Providers rely on the "80% Reasonable and Customary" phrase and related context from the call as the basis for all of their claims.   The phrase is found in paragraph 27 of the Amended Complaint as reflecting the terms of the offer underlying their breach of contract claim.   J. App'x at 32.   Similarly, the phrase is found in paragraph 74 of the Amended

---

[2] Counsel for the Providers do not contest either the accuracy or the authenticity of the call transcript. *See* Oral Arg. Audio Recording at 4:28–4:44.

Complaint as establishing the terms of the promise argued in support of their promissory estoppel claim. *Id*. at 39–40. Moreover, the Providers rely on the phrase to allege how Aetna was enriched by its failure to pay the Providers. *Id*. at 38–39 (Amended Complaint ¶¶ 67–72). Finally, the Providers point to this phrase as embodying the misrepresentation that allegedly induced them to accept Aetna's offer. *Id*. at 41 (Amended Complaint ¶¶ 82–84).

The Providers so heavily rely on the call terms in making their allegations that the transcript is easily determined to be integral to the Amended Complaint and may be considered at the motion to dismiss stage.[3]

### III.    Motion to Dismiss

Having concluded that the district court appropriately considered the transcript of the October 2020 call, we next review it in tandem with the Amended Complaint to determine if the Providers pleaded enough facts to support any of their claims.

### A.    The Providers fail to sufficiently plead a breach of contract claim.

We begin by looking at the Providers' allegations in support of their breach of contract claim. Under New York law, the first element of a breach of contract claim is the existence of a contract. *Eternity Glob. Master Fund Ltd. v. Morgan Guar. Trust Co. of NY*, 375 F.3d 168, 177 (2d Cir. 2004). A valid contract requires "an offer, acceptance, consideration, mutual assent, and an intent to be bound." *Register.com, Inc. v. Verio, Inc.*, 356 F.3d 393, 427 (2d Cir. 2004)

---

[3] The Providers argue that if on review we consider the call transcript, we must also consider the pre-authorization letter that Aetna sent to the Providers, the patient, and Hudson Regional Hospital, and that Aetna attached to its motion to dismiss. J. App'x at 241–50. We reject this contention. Repeatedly in their Amended Complaint, the Providers chose to rely on a phrase stated during the call as the basis for their claims; they did not rely on or even mention the pre-authorization letter, other than to note obliquely that on November 2, 2020, the surgery "was approved." J. App'x at 32 (Amended Complaint ¶ 24). We see no basis for considering the pre-authorization letter as integral to the Amended Complaint.

(internal quotation marks omitted). "An offer is the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it." Restatement (Second) of Contracts § 24 (Am. Law Inst. 1981). An offer must be "sufficiently definite [] such that its unequivocal acceptance will give rise to an enforceable contract." *Kolchins v. Evolution Mkts., Inc.*, 31 N.Y.3d 100, 106 (citing *Matter of Express Indus. & Term. Corp. v. N.Y.S. Dep't of Transp.*, 93 N.Y.2d 584, 589–90 (1999)).

To show the existence of an offer, the Providers allege that on the transcribed call, Aetna's employee "represented that [Aetna] would reimburse the services rendered to [the patient] based upon 80% Reasonable and Customary." J. App'x at 32 (Amended Complaint ¶ 20). In contrast, the call transcript, which again was properly considered, shows that the Providers' employee made the call to obtain the "benefits for outpatient surgery." J. App'x at 52:15–18. The employee then asked for the reimbursement rate, to which the Aetna employee replied, "80 percent reasonable and customary." *Id*. at 55:1–7. These are the only relevant portions of the transcript.

Now viewing the Providers' allegations together with the transcript, the Providers' allegations fall short of the definiteness typically required to create an offer, such as details of the specific service and the price or an explicit undertaking of a duty. *See Sokoloff v. Harriman Estates Dev. Corp.*, 96 N.Y.2d 409, 414–15 (2001) (finding an offer was sufficiently pleaded at the motion to dismiss stage where a specific design and price was set, and it was subsequently followed up with a written payment schedule for the proposed work); *see also 511 West 232nd Owners Corp. v. Jennifer Realty Co.*, 98 N.Y.2d 144, 154 (2002) (finding an offer sufficiently pleaded at the motion to dismiss stage where the offering plan stated with specificity the duty to sell a number of shares). Here, the lack of definiteness eliminates any uncertainty as to what a

6

reasonable factfinder would conclude about whether this conversation created an actionable offer by Aetna. Absent an offer, there can be no contract between the Providers and Aetna.

The district court was thus correct in dismissing the Providers' breach of contract claim.

**B. The Providers fail to sufficiently plead an unjust enrichment claim.**

The Providers' allegations similarly fail to sufficiently plead the elements of an unjust enrichment claim. An unjust enrichment claim allows "a plaintiff [to] recover in quasi-contract against a defendant who 'received a benefit from the plaintiff's services under circumstances which, in justice, preclude him from denying an obligation to pay for them.'" *New Spectrum Realty Servs., Inc. v. Nature Co.*, 42 F.3d 773, 777 (2d Cir. 1994) (quoting *Bradkin v. Leverton*, 26 N.Y.2d 192, 197 (1970)). To plead an unjust enrichment claim, the plaintiff must show: "(1) [the] defendant was enriched, (2) at plaintiff's expense, and (3) equity and good conscience militate against permitting defendant to retain what plaintiff is seeking to recover." *Briarpatch Ltd., L.P. v. Phoenix Pictures, Inc.*, 373 F.3d 296, 306 (2d Cir. 2004). In making this type of claim, the plaintiff's allegations must show that the defendant "received some benefit" from the plaintiff. *Kaye v. Grossman*, 202 F.3d 611, 616 (2d Cir. 2000). The benefit must be "specific and direct," and "some indirect benefit" will not be enough to support an unjust enrichment claim. *Id.* Here, the Providers' unjust enrichment claim fails for two reasons—Aetna neither benefitted from the Providers' services nor asked the Providers to perform the surgery.

The Providers allege that Aetna was enriched by their "failure to pay amounts due" and "every dollar that Aetna didn't pay that it was obligated to pay was a dollar in Aetna's pocket as pure profit." J. App'x at 38 (Amended Complaint ¶ 67). The Plaintiffs' allegations do not show how Aetna benefitted from their services. It was the patient, not Aetna, who received the benefit

7

of the Providers' direct services. The Providers rely solely on allegations of an abstract and attenuated indirect benefit Aetna received. This is insufficient.

Additionally, to recover under a theory of unjust enrichment, the plaintiff must show that the services were performed "*for the defendant*," and not at the "behest of someone other than the defendant." *Kagan v. K-Tel Ent., Inc.*, 568 N.Y.S.2d 756, 757 (N.Y. App. Div. 1991).[4] The Providers make no allegations that Aetna requested their services. Because the surgery was completed at the patient's request, the Providers must recover from the patient, not Aetna. *See Kagan*, 568 N.Y.S.2d at 757 (explaining that where services are provided at the "behest of someone other than the defendant, the plaintiff must look to that person for recovery.").

For these two reasons, the Providers fail to sufficiently plead an unjust enrichment claim.

## C. The Providers fail to sufficiently plead a promissory estoppel claim.

Similarly, the Amended Complaint fails to sufficiently allege a promissory estoppel claim. The first element of a promissory estoppel claim is a "clear and unambiguous promise." *Cyberchron Corp. v. Calldata Sys. Dev., Inc.*, 47 F.3d 39, 44 (2d Cir. 1995) (citations omitted). A promise is not "clear and unambiguous" where the allegations are premised on an ambiguity or where the alleged promise is conditional upon further agreements or negotiations. *See Readco, Inc. v. Marine Midland Bank*, 81 F.3d 295, 301 (2d Cir. 1996); *see also R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 79 (2d Cir. 1984).

---

[4] That this claim is one for unjust enrichment and not quantum meruit does not change the requirement that the services be provided at the request of the defendant. As this Court has stated, "[a]pplying New York law, [the court] may analyze quantum meruit and unjust enrichment claims together as a single quasi contract claim." *See Mid-Hudson Catskill Rural Migrant Ministry, Inc. v. Fine Host Corp.*, 418 F.3d 168, 175 (2d Cir. 2005). Therefore, this argument is without merit.

The Providers again rely on the Aetna employee's alleged representation of a reimbursement rate in the October 2020 call to support their promissory estoppel claim. J. App'x at 39–40 (Amended Complaint ¶¶ 74–80). Yet the transcript does not show any representation by Aetna that it would reimburse the Providers; as discussed above, the text of the call is ambiguous as to its scope and vague as to the terms. *See Readco*, 81 F.3d at 301 (finding no clear and unambiguous promise where the allegation was premised on a term in the agreement that was ambiguous); *see also R.G. Grp., Inc.*, 751 F.2d at 79 (finding a lack of a promise to support a promissory estoppel claim where the oral agreement was conditional on a subsequent written contract). Accordingly, the Providers' allegations, even with the benefit of the transcript's language, do not plead a clear and unambiguous promise that is actionable under existing law.

The district court was correct in dismissing the promissory estoppel claim.

**D.    The Providers fail to sufficiently plead a fraudulent inducement claim.**

The Providers raise one final claim—fraudulent inducement. A fraudulent inducement claim requires "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by appellants; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012) (citation omitted). A fraudulent inducement claim must be pleaded according to the heightened pleading standard of Federal Rule of Civil Procedure 9(b), which requires that the plaintiff "state with *particularity* the circumstances constituting fraud or mistake." *Loreley Fin. (Jersey) No. 3 Ltd. v. Wells Fargo Sec., LLC*, 797 F.3d 160, 171 (2d Cir. 2015) (quoting Fed. R. Civ. P. 9(b)) (emphasis added).

To adequately plead the first element of a fraudulent inducement claim, the material misrepresentation must be "collateral to the contract it induced." *Wall v. CSX Transp., Inc.*, 471 F.3d 410, 416 (2d Cir. 2006). For example, "general allegations that defendant entered into a contract while lacking the intent to perform it are insufficient to support [a fraud] claim." *Id.* (citation omitted). Additionally, a fraud claim will not be sustained on a motion to dismiss where the plaintiff is simply using the claim "as a means of restating what is, in substance, a claim for breach of contract." *Id.*

The Providers have repurposed the allegations underlying their breach of contract claim to allege a fraudulent inducement claim. The Providers allege that Aetna "intentionally told" the Providers that its "reimbursement was based upon '80% Reasonable Customary'" when it "knew its claims processing system did not allow for payment using 80% Reasonable and Customary." J. App'x at 41 (Amended Complaint ¶¶ 82–83). This is insufficient to allege a misrepresentation "collateral to" the allegations supporting their breach of contract claim. Instead, they have simply restated their breach of contract claim.

The district court was correct to dismiss this claim.

\*     \*     \*

We have considered the Providers' remaining arguments and find them to be without merit. Accordingly, we **AFFIRM** the judgment of the district court.

FOR THE COURT:
Catherine O'Hagan Wolfe, Clerk of Court

10